In re **GRAND JURY SUBPOENA TO AMAZON.COM DATED AUGUST 7, 2006.**

No. 07–GJ–04.

United States District Court, W.D. Wisconsin.

June 26, 2007.

On Motion to Withdraw July 10, 2007.

On Motion to Unseal November 13, 2007, *nunc pro tunc* November 7, 2007.

Order on Government's Objections Nov. 15, 2007.

Unsealed Nov. 15, 2007.

SEALED ORDER ON MOTION
TO QUASH

STEPHEN L. CROCKER, United States
Magistrate Judge.

Before the court is Amazon.com's motion
to quash that part of a grand jury subpoena
requesting the identities of a representative
sample of a specified group of used book
buyers. *See* dkt. 1. Amazon also has moved
to unseal redacted versions of its motion and
supporting documents. *See* dkt. 4. The
grand jury, appearing by the United States
Attorney, opposes both motions. At a June
25, 2007 hearing, I granted in part and de-
nied in part the motion to quash and denied
without prejudice the motion to unseal. This
order serves as an overview of those deci-
sions.

On August 7, 2006, a federal grand jury
sitting in this district issued a subpoena
duces tecum to Amazon.com ("Amazon")
seeking information about a prolific seller of
used books on Amazon, grand jury target
Robert B. D'Angelo. The grand jury is in-
vestigating whether D'Angelo evaded taxes
or engaged in a mail fraud/wire fraud scheme
involving D'Angelo's sale of about 24,000
used books over four years through Ama-
zon's website to third-party book buyers.
The grand jury subpoena directed Amazon to
provide virtually all of its records regarding
D'Angelo, including the identities of the thou-
sands of customers who had bought used
books from D'Angelo. The government sub-
sequently chose to reduce this scope of this
request to the identification of 120 book buy-
ers, 30 per year for the four years under
investigation. The government's plan was
for special agents of the FBI and IRS to
contact these 120 used book buyers in an
attempt to develop concrete evidence neces-
sary to lay a transactional foundation for
criminal charges of fraud and tax evasion
against D'Angelo. The government does not
suspect Amazon or D'Angelo's customers of
any wrongdoing, nor does it consider them
victims of D'Angelo; they simply are bricks

in the evidentiary wall being erected by the grand jury.

Amazon willingly provided most of the requested information but it has refused to identify any book buyers to the government, citing the buyers' First Amendment right to maintain the privacy of their reading choices. The government disagrees, responding that the Supreme Court never has recognized such a First Amendment privilege against disclosure to a grand jury, and further that the grand jury has a genuine investigative need for the identities of at least some of D'Angelo's customers. As discussed in more detail at the June 25, 2007 hearing, I have concluded that: (1) customers who bought used books from D'Angelo through Amazon do have a cognizable First Amendment right; (2) this court must consider this right when determining whether to require Amazon to comply with the grand jury subpoena; (3) the grand jury has a genuine investigative need to contact some of D'Angelo's used book customers directly; and (4) a single-blind process by which Amazon will ask for volunteer grand jury witnesses from the pool of D'Angelo's Amazon customers will protect the First Amendment rights of these customers while obtaining for the grand jury the witnesses it needs to complete its investigation.

While reserving the right to appeal this decision after further reflection, both sides agreed to begin drafting the letters necessary to implement Step (4). They agreed to a timeline by which they would exchange proposed drafts by the end of this week, exchange comments shortly thereafter, then report back to the court the week of July 9, 2007, hopefully with consensus letters and a draft order, or perhaps with competing documents that would require additional arguments to the court followed by a court decision.

■ To backfill just a bit, I have concluded that the court got it right in the case of *In re: Grand Jury Subpoena to Kramerbooks & Afterwards, Inc.,* 26 Med. L. Rptr. 1599 (D.D.C.1998). Although the Supreme Court in cases such as *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991), and *Branzburg v. Hayes,*

408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), never directly has imposed a higher standard for reviewing grand jury subpoenas that implicate First Amendment concerns, the Court has implied that lower courts should be mindful of any non-speculative First Amendment concerns when determining motions to quash subpoenas. Whether one calls this a "substantial relationship" test, *see In re Grand Jury 87–3 Subpoena Duces Tecum,* 955 F.2d 229, 232 (4th Cir. 1992), or a "compelling interest" test, *see In re Grand Jury Subpoenas Duces Tecum,* 78 F.3d 1307, 1312 (8th Cir.1996), the result is the same: although a grand jury subpoena is presumed valid and enforceable, if the witness demonstrates a legitimate First Amendment concern raised by the subpoena, then the government must make an additional showing that the grand jury actually needs the disputed information. Implicitly and logically, the reviewing court should use its discretion to fashion a solution that accommodates the legitimate needs of both the grand jury and the protesting witness.

■ In the instant case, we start with the presumption that the grand jury issued the challenged subpoena to Amazon in good faith in an attempt to obtain relevant information. Amazon does not dispute the government's claim that it is not seeking the identities of the sample of D'Angelo's used book buyers out of any interest in the book buyers themselves. Rather, these buyers merely are potential witnesses to D'Angelo's alleged fraud and tax evasion schemes by virtue of having completed financial transactions with him. It happens, however, that these transactions involved an expressive medium rather than pottery, bricks or widgets.

■ This presents a legitimate First Amendment concern. The subpoena is troubling because it permits the government to peek into the reading habits of specific individuals without their prior knowledge or permission. True, neither the government nor the grand jury is directly interested in the actual titles or content of the books that people bought, and I have enormous trust in the prosecutors and agents handling this investigation, with whom this court has worked

many times before. But it is an unsettling and un-American scenario to envision federal agents nosing through the reading lists of law-abiding citizens while hunting for evidence against somebody else. In this era of public apprehension about the scope of the USAPATRIOT Act, the FBI's (now-retired) "Carnivore" Internet search program, and more recent highly-publicized admissions about political litmus tests at the Department of Justice, rational book buyers would have a non-speculative basis to fear that federal prosecutors and law enforcement agents have a secondary political agenda that could come into play when an opportunity presented itself. Undoubtedly a measurable percentage of people who draw such conclusions would abandon online book purchases in order to avoid the possibility of ending up on some sort of perceived "enemies list." [1]

Taken a step further, if word were to spread over the Net-and it would-that the FBI and the IRS had demanded and received Amazon's list of customers and their personal purchases, the chilling effect on expressive e-commerce would frost keyboards across America. Fiery rhetoric quickly would follow and the nuances of the subpoena (as actually written and served) would be lost as the cyberdebate roiled itself to a furious boil. One might ask whether this court should concern itself with blogger outrage disproportionate to the government's actual demand of Amazon. The logical answer is yes, it should: well-founded or not, rumors of an Orwellian federal criminal investigation into the reading habits of Amazon's customers could frighten countless potential customers into canceling planned online book purchases, now and perhaps forever. Let me re-emphasize that I have no concerns about the government's good faith and intent in the instant case. Amazon, however, has a legitimate concern that honoring the instant subpoena would chill online purchases by Amazon customers. This First Amendment concern is a factor for the court to consider when determining whether to require compliance with the subpoena as currently configured.

So, although no Supreme Court precedent yet has required the government to pass a test of substantial relation or compelling need, I have required the government to explain the grand jury's investigative need for the identities of people who purchased used books from D'Angelo. The government's ex parte affidavit and the prosecutors' answers to my questions during the ex parte portion of the June 25, 2007 hearing establish that the government has a bona fide investigative need to contact and interview at least some of the people who bought used books from D'Angelo through Amazon. Therefore, I will not quash the subpoena.

Nonetheless, I have concluded that at this juncture (and perhaps at every juncture), the government is not entitled to unfettered access to the identities of even a small sample of this group of book buyers without each book buyer's permission. Everyone involved in this dispute agrees that the book buyers have done nothing wrong and face no direct scrutiny; accordingly, they should not be put unnecessarily to the embarrassment of an unsolicited FBI interview that might specifically deter them from future recorded book purchases or generally deter others who learn of this investigation.

Accordingly, I have ordered a filtering mechanism that calls for volunteer witnesses from the enormous pool of customers who bought used books from D'Angelo, Essentially, Amazon will send a letter to a subset of the 24,000 purchasers, advising them in general terms of the government's investigation and the customer's potential role in it. Amazon will attach a letter from the United States Attorney's Office providing the government's perspective, and a copy of another order prepared by this court that establishes the limits of Amazon's and the book buyer's responsibilities at this point. This packet will allow any used book buyer who chooses to cooperate with the investigation to contact the government and arrange an interview.

---

1. I am not finding that such fears are well-founded, but neither can I find them completely speculative or irrational. Quite apart from any book buyer's personal fear of federal apparatch-iks or black helicopters is the more commonly shared notion that living in the land of the free means that it's none of the government's business what books people are reading.

Anyone who wishes *not* to participate in this exercise, by virtue of his or her silence, will be left alone, and the government will never learn that person's identity or the titles of materials he/she purchased from D'Angelo through Amazon.

The content of these letters and orders, plus the size and geographic location of the sample have yet to be determined. If the parties do not appeal this order, then they anticipate working toward a consensus on the contents of all three documents. In the event consensus eludes them, then the court will determine the contents of the documents after giving the parties another opportunity to be heard.

Finally, I denied without prejudice Amazon's motion to unseal its documents, Notwithstanding the D'Angelo media tidbits someone is chumming into the local waters, D'Angelo is entitled at this time to avoid the publicity that would be triggered by unsealing the instant dispute, even if the documents were redacted. Similarly, the grand jury has a legal obligation to maintain the secrecy of its investigation to the greatest extent possible. Unsealing the documents generated in this dispute would violate that obligation. If the grand jury later returns a true bill against D'Angelo, closes its investigation without an indictment, or if some other event occurs that genuinely calls into question the need for continued secrecy, then Amazon may move for reconsideration. For now, however, all documents submitted to this court on this matter will remain under seal.

### SEALED ORDER ON MOTION TO WITHDRAW

On July 9, 2007, the government moved to withdraw the grand jury's subpoena to Amazon.com, Inc. The government explains its thought process in a July 9, 2007 ex parte supplemental affidavit filed by Assistant U.S. Attorney Daniel J. Graber.

The grand jury does not need court permission to withdraw a subpoena. Certainly Amazon isn't going to oppose this outcome, although undoubtedly it is curious about the reasons and irritated about the timing. The court is not allowed to satisfy Amazon's curiosity and there's not much I can do to salve the irritation other than to note that at least some of it is justified: if the government had been more diligent in looking for workarounds instead of baring its teeth when Amazon balked, it's probable that this entire First Amendment showdown could have been avoided. That said, it appears nevertheless that the government has proceeded at all times in good faith.

To the extent the government is seeking the court's imprimatur for withdrawing the grand jury subpoena, all I can say is that this is a logical and prudent decision under the circumstances. It appears that this dispute is over. All documents relating to the Amazon subpoena shall remain sealed until the grand jury returns an indictment against D'Angelo or closes the investigation, whichever occurs first.

### SEALED ORDER ON MOTION TO UNSEAL (Amended) [1]

On October 10, 2007, the grand jury returned an indictment against defendant Robert D'Angelo. *See United States v. D'Angelo,* 07–CR–143–C. Apparently the United States Attorney's Office has announced that it will not seek indictments against anyone else as part of the D'Angelo investigation, and the indicting grand jury, while still extant, no longer meets regularly.

■ On October 15, 2007, Amazon.com, Inc. ("Amazon") filed a short letter under seal asking this court to keep its July 10, 2007 promise (in dkt. 24) to unseal the record of the subpoena dispute between Amazon and the grand jury. *See* dkt. 25. On October 24, 2007, the U.S. Attorney's Office, on behalf of the grand jury (the "government") responded in opposition, asking that all documents related to this dispute remain sealed. *See* dkt. 26. Amazon, taken aback by the government's position, filed a 10½ page reply brief in which it limited its request to its own submissions and the court's orders. *See* dkt. 27.

F.R.Crim. P. 6(e)(2) states that "No obligation of secrecy may be imposed on any

1. To correct typographical errors on page 1 of the original order.

person except in accordance with Rule 6(e)(2)(B)," which conspicuously does not list grand jury witnesses. *See also* Advisory Committee Notes to Subdivision (2), 1944 Adoption. Therefore, as this court has acknowledged throughout this dispute, Amazon always has been free-and remains free-to disclose publicly the fact of the grand jury's subpoena and Amazon's response to it. Amazon, playing by the Queensberry Rules, has chosen not to go public without the court's imprimatur. As discussed below, Amazon's forbearance no longer is necessary.

Rule 6(e)(6) states that "Records, orders and subpoenas relating to grand jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before the grand jury." This contrasts with the stricter language of Rule 6(e)(2)(B), which prohibits grand jurors, prosecutors and others directly involved with the grand jury from disclosing any matter occurring before the grand jury except as provided by Rule 6(e)(3). Prior to the enactment of Rule 6(e)(6) in 1983, there was no explicit requirement that any of these documents be sealed. *See* Advisory Committee Notes, Rule 6(e)(6), 1983 Amendments. Despite use of the verb "must" in the rule, the qualifying language that followed led the committee to characterize it as precatory: "By *permitting* such documents as grand jury subpoenas and immunity orders to be kept under seal, this provision addresses a serious problem of grand jury secrecy and expressly *authorizes* a procedure now in use in many but not all districts." *Id.*, emphasis added. Given that it would not be an "unauthorized" disclosure for Amazon to go public on its own, and given that D'Angelo now has been indicted and the government has disclosed its discovery, does Rule 6(e)(6) even contemplate-let alone require-that this court maintain its orders under seal? The answer is no, it does not.

Block quotes are tedious and long block quotes are excruciating, but I'm still going to present two paragraphs of dicta from *Butterworth v. Smith,* 494 U.S. 624, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990), a case challenging a state gag law aimed at grand jury witnesses:

Although the English forerunner of the modern grand jury served primarily as a prosecutorial and investigative arm of the Crown and was designed to enhance the government's authority, by the 17th century the grand jury had developed an equally important function-to safeguard citizens against an overreaching Crown and unfounded accusations. The tradition of secrecy surrounding grand jury proceedings evolved, at least partially, as a means of implementing this latter function by ensuring the impartiality of that body. Today, grand jury secrecy remains important to safeguard a number of different interests.

\* \* \* \* \* \*

First, if pre-indictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Id.* at 629–30, 110 S.Ct. 1376.

The Court observed that when a grand jury's investigation ends, most of these concerns dissipate. *Id.* at 632–33, 110 S.Ct. 1376. The facts and holding of *Butterworth* are not on point here (indeed, Justice Scalia's concurrence drives home the factual distinction between that case and the instant dispute), but the Court's history lesson and list of secrecy concerns provide a useful template for what's at stake in this case.

As for the historical need for secrecy to protect the grand jury from the Crown, the dynamics of modern federal prosecutions are different, with many citizens regarding the grand jury as weapon of the government

rather than a shield from it. Shining some sunlight on the instant dispute reassures the public that someone is watching the watchers,[2] and that this district's federal prosecutors are part of the solution, not part of the problem. After all, the government bought into the court's compromise, then went further and voluntarily withdrew the grand jury's request for the contested information.

As for the more concrete reasons for grand jury secrecy, it is clear that few, if any, of these concerns are present in this case. As the Court of Appeals for the District of Columbia Circuit observed in *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152 (D.C.Cir.2007), "when once-secret grand jury material becomes sufficiently widely known, it may lose its character as Rule 6(e) material." *Id.* at 154. The court held that to the extent that grand jury witnesses already had revealed their testimony publicly, rule 6(e) no longer applied to it. *Id.* at 154–55. Using this logic, if Amazon were to choose to go public *sua sponte*, then it could dispel any lingering doubt about whether the court's orders should remain sealed.

Frankly, there doesn't appear to be much lingering doubt to dispel. The grand jury returned a "speaking" indictment against D'Angelo that provides a roadmap of the government's accusations and theory of prosecution. On November 5, 2007, the government produced to D'Angelo's attorney CDs holding information equivalent to about six banker's boxes of paper, among which undoubtedly are documents provided by Amazon pursuant to the uncontested portion of the subpoena. There no longer is any logical reason to maintain the secrecy of this court's orders mediating the subpoena dispute between Amazon and the grand jury.

This is all the more true given the fact that the grand jury ultimately withdrew the challenged sections of its subpoena. As a result, this court's sealed orders did not result in the production of any evidence to the grand jury. Unsealing these orders cannot possibly disclose information obtained and used by the grand jury as part of its investigation. At most, the orders reveal the process by which the grand jury initially sought to obtain evidence. We all can hypothesize situations in which disclosure of a grand jury's investigative decisions and techniques would be ill-advised, even if disclosure were to occur post-indictment. This is not such a situation. At issue here is a subpoena *duces tecum* served on a large corporation in order to obtain business information needed as foundational proof that D'Angelo actually sold some used books and CDs through Amazon. It's hard to envision a more prosaic set of facts, and anyone with a rudimentary knowledge of the rules of evidence could deduce that the government would need, seek and obtain such information from Amazon and similar conduits for resellers. Therefore, unsealing this court's orders regarding the Amazon subpoena adds nothing new to the substantive mix, for or against the government or D'Angelo.

Finally, the government chides Amazon for wanting access to this court's orders to further its litigation agenda in other courts. Amazon counter-chides the government for hypocrisy, accusing it of basking in favorable media attention for prosecuting D'Angelo while trying to deny Amazon the use of new precedent that reins in the government's ability to review third-party book purchases. Rule 6(e)(6) does not require Amazon to provide any justification for seeking to unseal the relevant orders, let alone a justification that satisfies the government. If it were to matter, it would be sufficient if Amazon's motives for unsealing were not improper. Amazon easily clears this low threshold. Whether this court's orders will have any impact beyond this case is for others to decide.

## ORDER

It is ORDERED that Amazon's motion to unseal its own motion and briefs (dkts. 1, 2, 4, 17, 18, 25 and 27) and this court's orders (dkts. 20 and 24, along with the instant order) is GRANTED.

To provide the government with the opportunity to appeal this order pursuant to F.R.Crim. P. 59(a), this order is STAYED until November 14, 2007 by which time the

2. *"Qui custodiet ipsos custodes?"*—Juvenal's Sat- ires.

government must file and serve any objections and supporting brief. *See also* 28 U.S.C. § 636(b)(1)(A). If the government does not intend to appeal, then it should notify the court promptly; apart from this and pursuant to Rule 59(a), failure to file a timely objection waives the government's right to review.

## ORDER ON GOVERNMENT'S OBJECTIONS

The government objects to this court's November 7, 2007 unsealing order (amended on November 13). *See* dkt. 29. At this juncture, the government's sole objection is that the unsealing order is lopsided: it did not provide for unsealing the government's submissions. Fair enough. The more sunshine, the better: anything the government wants added to the public record shall be unsealed. The government would like added to the list of unsealed documents dkts. 14 and 26, its briefs in opposition. Also, the November 13 amended order, dkt. 28, should be unsealed rather than the original November 7 order (also dkt. 28).

Therefore, it is ORDERED that the clerk of court forthwith shall unseal the following documents in this case file: dkts. 1, 2, 4, 14, 17, 18, 20, 24, 25, 26, 27, 28 (amended version) and 29. The instant order need not be sealed at all. All other documents in the file shall remain under seal.