# United States Court of Appeals

## For the First Circuit

No. 05-2193

STEVEN P. AMATO, D.C.,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Circuit Judge,
Bowman,[*] Senior Circuit Judge,
and Howard, Circuit Judge.

Michael A. Cunniff with whom Jay P. McCloskey, Thimi R. Mina, Kimberly L. Murphy, and McCloskey, Mina & Cunniff, LLC were on brief, for appellant.
James W. Chapman, Jr., Assistant United States Attorney, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

June 8, 2006

---

[*]Of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

**BOWMAN**, **Senior Circuit Judge**.  Dr. Steven P. Amato appeals the denial of his motion to quash two administrative subpoenas duces tecum served on him as custodian of records for two corporations in which he was the sole shareholder, director, officer and employee.  We affirm.

I.

Amato is a chiropractor in Damariscotta, Maine.  He has conducted his chiropractor business as a sole proprietorship and as a corporation.  In October 1997, Amato incorporated the business as Dr. Steven Amato, D.C., P.C. ("Amato P.C.") in New York and is Amato P.C.'s sole shareholder, director, officer and employee.  In September 2002, Amato incorporated Mainecures.com, Inc. ("Mainecures") in Maine.  A year later, Maine dissolved Mainecures for failing to file an annual report.  Amato was Mainecures's sole shareholder, director, officer and employee.

In January 2005, law enforcement, acting under the authority of a search warrant, searched Amato's office for evidence of federal health-care crimes.  During the search, law enforcement served two administrative subpoenas duces tecum on Amato as the records custodian of Amato P.C. and Mainecures.  See 18 U.S.C. § 3486 (2000).  The subpoenas required the records custodian to appear with the records at the United States Attorney's Office or, in lieu of an appearance, to deliver the records with certificates of authenticity to the United States Attorney's Office.

-2-

Amato moved to quash the subpoenas. Amato argued that the act-of-production doctrine protects production of the records because the testimonial aspects of the production would incriminate him.[1] Recognizing the collective-entity doctrine,[2] Amato nevertheless asserted that the act-of-production doctrine controls in his case. For support, Amato invoked a footnote in Braswell v. United States that left open the question of whether the collective-entity doctrine would apply if the custodian of corporate records is "able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records." 487 U.S. 99, 118-19 n.11 (1988). Because Amato is his corporations' sole shareholder, director, officer and employee, he

---

[1]Under the act-of-production doctrine, persons compelled by subpoena to produce incriminating records may invoke the Fifth Amendment privilege against self-incrimination "only where the act of producing the evidence would contain 'testimonial' features." United States v. Hubbell, 530 U.S. 27, 49 (2000) (Thomas, J., concurring); Fisher v. United States, 425 U.S. 391, 408 (1976) (stating that while "the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence," it does apply "when the accused is compelled to make a *testimonial* communication that is incriminating").

[2]The collective-entity doctrine recognizes that the Fifth Amendment treats corporations and collective entities differently from individuals. Braswell v. United States, 487 U.S. 99, 104 (1988). Because corporations and collective entities have no Fifth Amendment privilege against self-incrimination and because a "custodian of corporate or entity records holds those documents in a representative rather than a personal capacity," the custodian cannot claim a personal Fifth Amendment privilege against the production of corporate records. Id. at 109-11.

-3-

asserted his personal Fifth Amendment privilege against producing the corporate records. Amato also argued that Mainecures's records are privileged because Mainecures was a dissolved corporation.

In considering the motion to quash, the magistrate judge recognized that the collective-entity doctrine has not provided Fifth Amendment protection to custodians of corporate records because custodians act in their representative, rather than their personal, capacities when complying with a subpoena directed at the corporation. The magistrate judge declined to recognize an exception to the collective-entity doctrine that would fit Amato's situation: he is the target of an investigation, the custodian of records, and the corporation's sole shareholder, director, officer and employee. The judge reasoned that the First Circuit has rejected such an exception, see United States v. Lawn Builders of New Eng., Inc., 856 F.2d 388 (1st Cir. 1988); In re Grand Jury Proceedings (The John Doe Co.), 838 F.2d 624 (1st Cir. 1988), and concluded that Braswell's footnote does not contradict the First Circuit's holdings. The magistrate judge also rebuffed Amato's argument that Mainecures's records are privileged because the records now belong to Amato's sole proprietorship, Mainecures having been dissolved before the subpoena issued. The judge concluded that Maine law dictates that a dissolved corporation exists for up to three years after dissolution to wind up its business affairs. Thus, the judge held that no Fifth Amendment

-4-

privilege guards against the subpoena directed at Mainecures's custodian of records.

Adopting the magistrate judge's view of the matter, the district court denied Amato's motion to quash. After the district court further denied a motion to stay enforcement of the subpoenas pending appeal, Amato's attorney produced the records and the certificates of authenticity, but stated that Amato did not waive his constitutional rights by complying with the subpoenas.

Amato appeals, contending that "the Fifth Amendment protects a (sole shareholder/sole employee) one-person corporate entity from compulsory self-incrimination arising from the act of producing materials pursuant to an administrative subpoena." Amato also contends that Mainecures's records should be treated as records of Amato's sole proprietorship and that as such, they enjoy Fifth Amendment protection from production.

## II.

Denials of motions to quash are reviewed for abuse of discretion. In re Grand Jury Subpoena, 138 F.3d 442, 444 (1st Cir. 1998), cert. denied, 524 U.S. 939 (1998). Because Amato contends that the district court operated under an erroneous view of the law, we review de novo the district court's legal analysis. Id.

### A.

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself."

U.S. Const. amend V. "The word 'witness' in the constitutional text limits the relevant category of compelled incriminating communications to those that are 'testimonial' in character." United States v. Hubbell, 530 U.S. 27, 34 (2000). A corporation does not enjoy the privilege against self-incrimination guaranteed by the Fifth Amendment, as the privilege is a personal privilege enjoyed by natural individuals. See Braswell, 487 U.S. at 102 (acknowledging the "well-established [rule] that such artificial entities [as corporations] are not protected by the Fifth Amendment"); United States v. White, 322 U.S. 694, 698 (1944) (explaining that the "constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals"). Furthermore, the contents of corporate records generally do not enjoy Fifth Amendment protection. See Braswell, 487 U.S. at 102; United States v. Doe, 465 U.S. 605, 612 (1984). The rationale underpinning these principles is that the Fifth Amendment's privilege against self-incrimination "is designed to prevent the use of legal process to force from the lips of the accused individual the evidence necessary to convict him or to force him to produce and authenticate any personal documents or effects that might incriminate him." White, 322 U.S. at 698.

In addition, the Supreme Court has long held that the collective-entity doctrine precludes a custodian of corporate records from relying on the Fifth Amendment to block the production

-6-

of those records.  See Bellis v. United States, 417 U.S. 85, 88 (1974) (explaining that a "long line of cases has established that an individual cannot rely upon the [Fifth Amendment] privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally").  The Court in Braswell stated that its cases applying the collective-entity doctrine hold "that without regard to whether the subpoena is addressed to the corporation, [or] to the individual in his capacity as a custodian, . . . a corporate custodian . . . may not resist a subpoena for corporate records on Fifth Amendment grounds."  487 U.S. at 108-09 (citations omitted).  Finally, the Supreme Court has stated that well-settled law applying the collective-entity doctrine holds that custodians of corporate records have no Fifth Amendment privilege, "regardless of how small the corporation may be."  Bellis, 417 U.S. at 100.

Despite the collective-entity doctrine's far reach, cases such as the instant case must confront the act-of-production doctrine.  The act-of-production doctrine recognizes that although "the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence," it does apply "when the accused is compelled to make a *testimonial* communication that is incriminating."  Fisher v. United States, 425 U.S. 391, 408

-7-

(1976).  The Supreme Court has expressed its concerns over the testimonial nature of acts of production:

> The act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced.  Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the [individual producing the records].  It also would indicate the [individual]'s belief that the papers are those described in the subpoena.  The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the [individual] are both "testimonial" and "incriminating" for purposes of applying the Fifth Amendment.  These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases. . . .

Id. at 410 (citation omitted); Doe, 465 U.S. at 612, 613-14 (stating that "[a]lthough the contents of a document may not be privileged, the act of producing the document may be" because the holder of the document is compelled "to perform an act that may have testimonial aspects and an incriminating effect"; concluding that the district court did not err in finding that a sole proprietor's "act of producing [subpoenaed business] documents would involve testimonial self-incrimination"); see also Hubbell, 530 U.S. at 36-37 (discussing the act-of-production doctrine).

It is fair to say that while the collective-entity doctrine focuses on the contents of corporate records or at least the status of the records, i.e., corporate or individual, the act-

-8-

of-production doctrine focuses on whether an individual's compelled acts in producing records involve testimonial self-incrimination. This case tests Fifth Amendment boundaries when the act-of-production doctrine intersects with the collective-entity doctrine. In the present case, the issue is whether the Fifth Amendment protects Amato's act of producing the subpoenaed records in his capacity as custodian of the corporate records because the act itself would incriminate Amato personally. In other words, we ask whether the Fifth Amendment recognizes an exception to the collective-entity doctrine such that an act-of-production privilege protects a custodian of corporate records from producing those records when the custodian is the corporation's sole shareholder, director, officer and employee.

Our resolution of this issue is controlled by our decision in John Doe Co., in which we decided that the act-of-production doctrine is not an exception to the collective-entity doctrine even when the corporate custodian is the corporation's sole shareholder, officer and employee. 838 F.2d at 627. In asserting a Fifth Amendment privilege, Amato ignores the holding of John Doe Co. Instead, he seeks refuge in the language later used by the Supreme Court in footnote eleven in Braswell:

> We leave open the question whether the agency rationale [behind the collective-entity doctrine] supports compelling a custodian to produce corporate records when the custodian [can] establish, by showing for example that he is the sole employee and officer of the

> corporation, that the jury would inevitably conclude that he produced the records.

487 U.S. at 118–19 n.11. Our reading of Braswell and of our caselaw, however, leads us to conclude that such refuge is unavailable in this circuit.

Although Braswell does not directly contradict Amato's argument, the decision contains nothing that would justify our reconsideration of our holding in John Doe Co.. In Braswell, the Supreme Court held that "the custodian of corporate records may [not] resist a subpoena for such records on the ground that the act of production would incriminate him in violation of the Fifth Amendment." 487 U.S. at 100. Randy Braswell operated his business through two corporations, with himself as the sole shareholder of both. State law required the corporations to have three directors, so Braswell's wife and mother were directors along with Braswell. All three were also corporate officers. A federal grand jury issued a subpoena to Braswell in his capacity as president of the corporations to produce the corporations' records. Moving to quash the subpoena, Braswell argued that the Fifth Amendment's act-of-production doctrine prohibited the compulsion of the records.

Given Braswell's argument, the Supreme Court discussed the act-of-production and the collective-entity doctrines. The Court recognized that the act-of-production doctrine "embarked upon a new course of Fifth Amendment analysis," but did not "render[]the collective entity rule obsolete." Id. at 109. The Court recounted

-10-

the collective-entity doctrine's "lengthy and distinguished pedigree," recognizing that since 1906 it has held that representatives of collective entities, including corporate officers, possess no Fifth Amendment privilege to refuse to produce records that belong to collective entities, including corporate records. Braswell, 487 U.S. at 104–13 (discussing Bellis, 417 U.S. 85; White, 322 U.S. 694; Dreier v. United States, 221 U.S. 394 (1911); Wilson v. United States, 221 U.S. 361 (1911); and Hale v. Henkel, 201 U.S. 43 (1906)). The Court explained:

> [T]he Court has consistently recognized that the custodian of corporate or entity records holds those documents in a representative rather than a personal capacity. Artificial entities such as corporations may act only through their agents, and a custodian's assumption of his representative capacity leads to certain obligations, including the duty to produce corporate records on proper demand by the Government. Under those circumstances, the custodian's act of production is not deemed a personal act, but rather an act of the corporation. Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege.

Id. at 109–10 (citation omitted). Braswell did not alter the application of the collective-entity doctrine in this circuit. See also United States v. Milligan, 371 F. Supp. 2d 1127, 1129 (D. Ariz. 2005) (stating that no court has treated the language in Braswell's footnote eleven as an exception to the collective-entity doctrine).

-11-

Our caselaw rejects Amato's argument suggesting that we should recognize an exception to the collective-entity doctrine where the custodian of records is the corporation's sole shareholder, director, officer and employee. Four months before the Supreme Court decided Braswell, this court held "that the sole shareholder of a one-man corporation has no 'act of production privilege' under the fifth amendment to resist turnover of corporate documents." John Doe Co., 838 F.2d at 627 n.3. In John Doe Co., which is very similar to Amato's case, a grand jury investigated an individual (referred to by the court as "Owner") who was a corporation's sole shareholder, officer and employee. When the grand jury issued a subpoena to the corporation's "Keeper of the Records," the Owner's attorney provided the government some of the records, but "the corporation refused to authenticate the documents before the grand jury or to provide testimony (through Owner or by designating some other agent) that they were *all* the records of the corporation." Id. at 624. The Owner also "refused to stipulate to these facts or to appoint an agent of the corporation to provide the requested testimony." Id. The government moved to compel the production of the corporate records, while the corporation moved to quash the subpoena. The district court denied the motion to compel and granted the motion to quash "on the basis that the compelled testimony would likely force Owner to incriminate himself in violation of his fifth amendment right

-12-

not to be a witness against himself." <u>Id.</u> at 624-25. This circuit reversed "on the basis that the subpoena is directed at the corporation which receives no constitutional protection from self-incrimination." <u>Id.</u> at 624.

Acknowledging that "the very act of producing the documents may, in some circumstances, be a testimonial act of authentication," we nevertheless concluded that "production, including implied authentication, can be required of a corporation through a corporate officer regardless of the potential for self-incrimination." <u>Id.</u> at 626; <u>see also</u> <u>Bellis</u>, 417 U.S. at 90 ("Since no artificial organization may utilize the personal privilege against compulsory self-incrimination, . . . it follows that an individual acting in his official capacity on behalf of the organization may likewise not take advantage of his personal privilege."). This court also concluded that a so-called "one-man corporation" fares no better under the collective-entity doctrine:

> "It is well settled that no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be." <u>Bellis</u>, 417 U.S. at 100. It was Owner's choice to incorporate. With that choice came all the attendant benefits *and responsibilities* of being a corporation. One of those responsibilities is to produce and authenticate records of the corporation when they are subpoenaed by a grand jury. How the corporation chooses to fulfill this duty is not the court's concern.

<u>John Doe Co.</u>, 838 F.2d at 627.[3]

In a case argued eight days after <u>Braswell</u> was decided, this court, citing <u>Braswell</u>, reaffirmed its application of the collective-entity doctrine to a corporation where the sole shareholder was also the sole officer and employee: "even assuming [the corporation] to be a one-man corporation and [the corporate custodian] to be that one man, the corporate records are not shielded from production, nor may [the corporate custodian] resist a subpoena for those records on the ground that the act of production would impermissibly infringe on his Fifth Amendment right against self-incrimination." <u>Lawn Builders</u>, 856 F.2d at 394.

Amato also invokes this court's decision in <u>In re Grand Jury Subpoena</u>, 973 F.2d 45 (1st Cir. 1992), to cast doubt on the precedential value of <u>John Doe Co.</u> and <u>Lawn Builders</u>. But there is nothing in that case that causes us to rethink our previous decisions that foreclose Amato's argument. <u>In re Grand Jury Subpoena</u> held that the collective-entity doctrine precluded the possibility that the records of a nominee trust were privileged under the Fifth Amendment. 973 F.2d at 46. In reaching that

---

[3]The court opined that the Supreme Court was likely to decide "the pivotal question presented in this appeal" in the <u>Braswell</u> appeal. <u>John Doe Co.</u>, 838 F.2d at 627 n.3. As already explained, the Supreme Court did not decide the pivotal question of whether the collective-entity doctrine is applicable where the corporate custodian is also the sole shareholder, officer and employee, nor did the Supreme Court call into question this circuit's decision in <u>John Doe Co.</u>.

-14-

decision, the court iterated, "Whether an organization is properly deemed a collective entity has little to do with its size. 'It is well settled that no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be.'" Id. at 47 (quoting Bellis, 417 U.S. at 100). The court also noted that "Braswell held the [collective-entity] rule applicable to a one-person corporation." Id. In a footnote to this statement, the court recognized Braswell's footnote eleven. Id. n.3 (quoting Braswell, 487 U.S. at 118 n. 11). Amato relies on the footnote in In re Grand Jury Subpoena to argue that we reopened the issue of whether an exception to the collective-entity doctrine exists where the records custodian is the corporation's sole shareholder, officer and employee. We see nothing that supports this contention.

Although we acknowledged in In re Grand Jury Subpoena that the Supreme Court left open the question of whether the collective-entity doctrine applies where the custodian is the sole officer and employee of the corporation, we did not call into question our own precedent holding that it does. Accordingly, we follow our precedent and affirm the district court's order denying Amato's motion to quash the administrative subpoena directed at him as the corporations' custodian of records. See generally Wallace v. Reno, 194 F.3d 279, 283 (1st Cir. 1999) ("When a panel of this circuit has decided an issue, another panel will ordinarily not

-15-

revisit that issue; but, of course, this limitation does not apply where an intervening decision of the Supreme Court overturns or undermines our earlier decision."); Lacy v. Gardino, 791 F.2d 980, 985 (1st Cir. 1986) ("Uniformity of decisions within a multi-panel circuit can only be achieved by strict adherence to prior circuit precedent, with the error-correcting function reserved to the court sitting en banc."), cert. denied, 479 U.S. 888 (1986).

B.

Finally, we conclude that the district court committed no error in concluding that Mainecures's records remained corporate records after the corporation's dissolution. See Me. Rev. Stat. Ann. tit. 13-C, § 1406(1) ("A dissolved corporation continues corporate existence for a period not exceeding 3 years from the effective date of the articles of dissolution . . . to wind up and liquidate its business and affairs. . . ."); 1406(2) ("Dissolution of a corporation does not: A. Transfer title to the corporation's property; . . . E. Prevent commencement of a proceeding by or against the corporation in its corporate name; . . . or G. Terminate the authority of the clerk of the corporation."). Mainecures was dissolved in late 2003, less than three years before the service of the subpoena in January 2005. And nothing in the record suggests that Mainecures's dissolution effected a transfer of its corporate records to Amato personally. Moreover, the Supreme Court has stated that corporate records receive no Fifth

Amendment protection even after dissolution.  <u>Bellis</u>, 417 U.S. at 96 n.3 (recognizing that Supreme Court decisions make "clear that the dissolution of a corporation does not give the custodian of the corporate records any greater claim to the Fifth Amendment privilege"); <u>Grant</u> v. <u>United States</u>, 227 U.S. 74, 80 (1913); <u>Wheeler</u> v. <u>United States</u>, 226 U.S. 478, 490 (1913).

## III.

For the reasons discussed, we decline Amato's invitation to reconsider our prior caselaw on the applicability of the collective-entity doctrine in cases involving a records custodian who is also the corporation's sole shareholder, officer and employee.  We also conclude that Mainecures's dissolution did not protect its records from the reach of the subpoena in this case.  Therefore, we affirm the district court's order denying Amato's motion to quash.[4]

---

[4]Although the Supreme Court in <u>Braswell</u> held that "a corporate custodian is not entitled to resist a subpoena on the ground that his act of production will be personally incriminating," the Court recognized that "certain consequences flow from the fact that the custodian's act of production is one in his representative rather than personal capacity."  487 U.S. at 117-18.  The Court explained that the government could not use an individual's act of production against him, but could use the corporation's act of production against the individual.  <u>Id.</u> at 118.