KAHN, J.
When petitioners recently challenged a circuit court order compelling them to turn over certain documents to the attorney general’s office, this court denied their petition for a writ of certiorari without comment. Federated Inst for Patent & Trademark Registry v. State, 975 So.2d 1137 (Fla. 1st DCA 2008). We likewise deny this, petitioners’ second petition, which raises substantially the same arguments as the first and seeks vacation of an order compelling petitioners to respond to the State’s second request for production in the same underlying litigation. We now write to explain why petitioner Bernd Tau-bert, in his representative capacity as an “officer and/or director” of Federated Institute for Patent and Trademark Registry (“Federated”), and its designated custodian of records, is not entitled to claim a Fifth Amendment privilege from producing corporate documents that, he fears, might incriminate him personally.

PROCEDURAL BACKGROUND

The State, through the Office of the Attorney General, brought the underlying civil suit against Federated and Taubert under the Florida Deceptive and Unfair Trade Practices Act, chapter 501, part II, Florida Statutes (2006). The suit charges that Federated sent “phony invoices” to corporate applicants for patents and trademarks, deceiving those applicants into believing that Federated was somehow involved in the application process, and impelling them to remit money to the corporation to maintain the currency of their applications.
The discovery request at issue here targeted items related to the State’s factual allegations. The State sought, pertinent to this petition, “[t]he names and contact information of all individuals, companies or entities that have sent funds to Federated in response to any solicitations, invoices or other documents that Federated sent to them”; the dates on which Federated received funds from those persons; the identities of all persons and entities to whom petitioners sent solicitations; the trademark and patent details referenced in those solicitations; a list of entities with financial interests in Federated; copies of any written communications documenting Federated’s operating plan, revenues, marketing strategy, and complaints and inquiries from recipients of the solicitations; and “a list of all entities that received any funds, directly or indirectly, from Federated.” The circuit court has entered an order compelling production of the requested documents.

ANALYSIS

Mr. Taubert now seeks extraordinary writ relief, advancing his claim that, *1164 as the corporation’s records custodian and its sole officer within the court’s jurisdiction, he would expose himself to personal criminal liability were he forced to produce the documents. He argues the Fifth Amendment protects him from such self-incrimination when acting in his representative capacity. The case law, however, does not support such an argument, given the facts of this litigation.
Rejecting a similar contention, the United States Supreme Court held that a corporate records “custodian may not resist a subpoena for corporate records on Fifth Amendment grounds.” Braswell v. United States, 487 U.S. 99, 113, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). Noting that corporations themselves “of course possess[ ] no [Fifth Amendment] privilege,” the majority in Braswell wrote that “recognizing a Fifth Amendment privilege on behalf of the records custodians of collective entities” — such as corporations — “would have a detrimental impact on the Government’s efforts to prosecute ‘white-collar crime’.... If custodians could assert a privilege, authorities would be stymied not only in their enforcement efforts against those individuals but also in their prosecutions of organizations.” Id. at 109, 115-16, 108 S.Ct. 2284; see also Amato v. United States, 450 F.3d 46, 51 (1st Cir.2006) (noting that, under Braswell regime, “representatives of collective entities, including corporate officers, possess no Fifth Amendment privilege to refuse to produce records that belong to collective entities, including corporate records”).
Attempting to fend off Braswell, petitioners suggest that United States v. Hubbell, 530 U.S. 27, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000), and the corresponding “act-of-production” doctrine supply the controlling rules in this case. The Court in Hubbell held that, when the very act of relinquishing incriminating documents is testimonial in nature, the Fifth Amendment protects an individual defendant from compulsion to undertake that act, which more or less testimonially confirms the existence of incriminating materials. 530 U.S. at 45, 120 S.Ct. 2037. Hubbell arose from grand jury proceedings in which the government sought a broad array of documents from former Arkansas attorney Webster Hubbell, then under scrutiny for alleged tax evasion and mail and wire fraud. Id. at 30, 46-49, 120 S.Ct. 2037. The government’s subpoena in Hub-bell cast a wide net, seeking personal documents that included tax returns, personal calendars, records of “sources of money or other things of value received by or provided to Webster Hubbell, his wife, or children,” and the like. Id. at 46-49, 120 S.Ct. 2037. The Court determined that “the ‘compelled testimony’ that is relevant in this case is not to be found in the contents of the documents produced in response to the subpoena. It is, rather, the testimony inherent in the act of producing those documents.” Id. at 45, 120 S.Ct. 2037. Because the act of production would have amounted to a testimonial acknowledgment of the documents’ existence and Hubbell’s possession and control of them, the Court recognized a narrow Fifth Amendment privilege protecting him from compelled production. Id.
We acknowledge that under Hubbell, a records custodian may legitimately exercise his or her Fifth Amendment privilege from individually responding to a request for production in some instances. As an example, the privilege could apply where the government seeks documents merely to “authenticate” them or to obtain an acknowledgment of the custodian’s control over them. See In re Grand Jury 83-8 Subpoena Duces Tecum, 611 F.Supp. 16, 24 (S.D.Fla.1985). In such a case, the act of production takes on testimonial significance, and the court “must carefully con *1165 sider whether compliance with the subpoena would implicate the Fifth Amendment.” Id.
Petitioners have not demonstrated that this case fits into the narrow slot reserved for cases where the act of production itself would personally incriminate the records custodian. Indeed, we discern no testimonial dimension at all to Taubert’s mere act of producing the documents requested. Unlike the request for production at issue in Hubbell — an undifferentiated quest for incriminating documents — the State’s request here is specifically targeted to corporate records pertaining to the civil suit against the corporation. Petitioners do not show that the State seeks the documents merely to “authenticate” them, to build a criminal case against Taubert individually, or to obtain an incriminating acknowledgment of Taubert’s control of the materials. See Hubbell, 530 U.S. at 30, 45, 120 S.Ct. 2037; Grand Jury 83-8 Subpoena Duces Tecum, 611 F.Supp. at 24. Rather, this case presents a straightforward scenario where a records custodian seeks to resist a discovery request because the contents of the documents requested may incriminate the custodian personally. In such a case, the custodian cannot resist the request under a Fifth Amendment privilege against self-incrimination. Braswell, 487 U.S. at 113, 115, 108 S.Ct. 2284.
We do note that Braswell and its progeny impose some important restraints on the State’s use of the spoils of discovery in a hypothetical future criminal proceeding against Mr. Taubert individually. The Court commented in Braswell:
[Although a corporate custodian is not entitled to resist a subpoena on the ground that his act of production will be personally incriminating, we do think certain consequences flow from the fact that the custodian’s act of production is one in his representative rather than personal capacity. Because the custodian acts as a representative, the act is deemed one of the corporation and not the individual. Therefore, the Government ... may make no evidentiary use of the ‘individual act’ against the individual. For example, in a criminal prosecution against the custodian, the Government may not introduce into evidence before the jury the fact that the subpoena was served upon and the corporation’s documents were delivered by one particular individual, the custodian.... [I]f the defendant held a prominent position within the corporation that produced the records, the jury may, just as it would had someone else produced the documents, reasonably infer that he had possession of the documents or knowledge of their contents. Because the jury is not told that the defendant produced the records, any nexus between the defendant and the documents results solely from the corporation’s act of production and other evidence in the case.
Braswell, 487 U.S. at 117-18, 108 S.Ct. 2284. The assistant attorney general, in response to the petition for certiorari in this case, has candidly and professionally noted that the State recognizes the limitations on the future use in a prospective criminal proceeding of evidence uncovered through discovery in the present civil litigation.
We acknowledge that Mr. Taubert’s obligations to the corporation as its official representative place him in what he views as a tenuous position, one in which discharging his official responsibility to respond to discovery requests on the corporation’s behalf may facilitate the construction of a criminal case against him individually. The Supreme Court in Braswell, however, conclusively held that neither a corporation nor a person in Mr. *1166 Taubert’s representative position may claim a Fifth Amendment privilege.
Accordingly, petitioners may not resist producing the documents sought on the basis of a Fifth Amendment privilege against self-incrimination. We DENY the petition for a writ of certiorari.
WOLF and VAN NORTWICK, JJ., concur.