### In re GRAND JURY SUBPOENA (JOHN DOE, INC.).

#### Case No. 13–50987.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 13, 2014.

F. William Soisson, U.S. Attorney's Office, Detroit, MI, for Grand Jury Subpoena (John Doe, Inc.).

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOVANT'S MOTION TO QUASH GRAND JURY SUBPOENA

### (Redacted)

DAVID M. LAWSON, District Judge.

Can the sole employee and owner of a corporation rely on the Fifth Amendment to refuse production of and testimony related to corporate documents subpoenaed by a grand jury? Settled law says the answer is "No," for the most part, at least for the production part. But the sole agent of a one-person collective entity, such as a corporation, can assert her Fifth Amendment privilege to refuse testimony

beyond certifying that the documents are authentic, that is, that they are what they purport to be.

The grand jury served a subpoena duces tecum on John Doe, Inc., a one-person corporation owned and operated by Mary Roe, demanding the production of corporate records relating to projects for ABC Company and XYZ Company. The subpoena states that in lieu of a personal appearance, Mary Roe, as the corporate agent, may furnish the records along with a certificate to be signed under oath verifying the authenticity of the records, and a second certificate attesting to certain foundational facts apparently intended to satisfy the business record exception to the hearsay rule, *see* Fed. R.Evid. 803(6). Mary Roe has moved to quash the subpoena on the ground that the acts of production and certification would violate her right against self-incrimination under the Fifth Amendment. After briefing, oral argument, and supplemental briefing by Mary Roe and the government, the Court concludes that the Fifth Amendment does not excuse Mary Roe from producing the records and certifying that they are authentic. However, Mary Roe may interpose the Fifth Amendment to resist certifying and testifying to facts that are required by Rule 803(6), because as an agent of a one-person entity, revealing that information could acknowledge facts beyond those inherent in the mere act of production, which in turn could amount to self-incrimination. Therefore, the motion to quash the grand jury subpoena will be granted in part and denied in part.

## I.

Mary Roe is the owner of John Doe, a Michigan-based corporation established on March 28, 2011. The company has no other employees. The government alleges that John Doe joined with one of the targets of a current grand jury investigation to defraud XYZ Company out of thousands of dollars. The government says that John Doe billed XYZ Company, through ABC Company, for engineering services that it did not perform. ABC Company, the government alleges, bid on engineering projects and staffed those projects with its own employees or subcontractors. The government alleges that John Doe submitted invoices and received compensation for work that Mary Roe claimed to, but did not actually, perform.

The grand jury issued a subpoena on April 30, 2013 that directed John Doe to testify and produce documents relating to the company's business dealings with ABC Company and XYZ Company. The subpoena lists Mary Roe as John Doe's agent and was served on her. Mary Roe moved to quash the grand jury subpoena on the grounds that it is overbroad and violates her Fifth Amendment privilege against self-incrimination.

The documents requested include invoices, communications, payments received, and records of hours worked and/or projects completed between January 1, 2009 and December 31, 2012. The subpoena states that Mary Roe could avoid testifying if she provided to an FBI agent the listed documents concerning her business dealings with ABC Company and XYZ Company, but only if she completed two forms attached to the subpoena. The first attachment, entitled "Certificate of Authenticity of Business Records," requires Mary Roe to state under penalty of perjury that (1) Mary Roe is either the custodian of the records or qualified to identify and authenticate the records, and (2) the records were made by a person with knowledge of the matters contained in the records. The second attachment, entitled "Waiver of Right to Appear Before Grand

Jury and Records Receipt," require Mary Roe to provide an itemized list of the documents, records, and objects produced. It also requires certification that the documents are responsive to the subpoena, and are within her possession, custody, or control.

## II.

■ Mary Roe makes four arguments. *First,* she says that the subpoena is overbroad because it seeks records that pre-dated the formation of the corporation, and therefore calls upon her to produce her personal documents, which are certainly protected by the Fifth Amendment. That argument is easily dispatched, since the government concedes that it only considers documents made after the corporation's formation to be responsive to the subpoena. Therefore, Mary Roe need not produce documents created before March 28, 2011.

*Second,* Mary Roe contends that John Doe performed no paid work for ABC Company or XYZ Company in the first three months of the corporation's existence. Therefore, she says, she had only personal business dealings with ABC Company before July, 2011 and any records of her personal business dealings with ABC Company are protected by the Fifth Amendment. *Third,* Mary Roe insists that the Court should quash the subpoena altogether because compliance with the subpoena would violate the Fifth Amendment. She says that compliance with the subpoena would incriminate her because she is the sole employee, officer, director, and shareholder of John Doe. *Fourth,* Mary Roe contends that compliance with the subpoena would require her to furnish an important link in the chain of evidence necessary to prosecute her for a crime if she is required to testify or certify that the documents are genuine and within her pos-

session as corporate custodian, and that the documents were kept in the course of a regularly conducted business activity, it was the regular practice of the business to make the records, and the records were made by or from information transmitted by a person with knowledge of the documented transactions.

■ As an initial matter, a court may quash a subpoena "if compliance would be unreasonable or oppressive." Fed.R. Crim.P. 17(c)(2). Both sides agree that the Fifth Amendment forbids an accused from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Because of this protection, the government may not force a citizen to produce to a grand jury self-incriminating private papers. *Bellis v. United States,* 417 U.S. 85, 87, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1975) (reiterating that "the Fifth Amendment ... protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony."). A subpoena for such personal documents would be "unreasonable or oppressive." "The constitutional privilege against self-incrimination ... is designed to prevent the use · of legal process to force from the lips of the accused individual the evidence necessary to convict him or to force him to produce and authenticate any personal documents or effects that might incriminate him." *United States v. White,* 322 U.S. 694, 698, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944). The question that divides the parties here is whether the grand jury subpoena issued to Mary Roe's company trenches upon these fundamental rights.

### A.

■ The Court cannot provide a clear answer to Mary Roe's objection to producing documents created during the company's first three months, because the par-

ties have not stated enough facts. As with the pre-incorporation documents, if the documents are Mary Roe's personal papers, they would not be responsive to the subpoena and probably would be protected by the Fifth Amendment. Any "records subpoenaed must in fact be organizational records held in a representational capacity. In other words, it must be fair to say that the records demanded are the records of the organization rather than those of the individual." *Bellis,* 417 U.S. at 93, 94 S.Ct. 2179 (citing *White,* 322 U.S. at 701, 64 S.Ct. 1248). But if the documents can be characterized as corporate documents, then the obligation to produce is subject to the arguments discussed below. If there is some doubt about a particular document, then Mary Roe may submit it to the Court *in camera* and request a ruling.

### B.

■ Mary Roe's argument that the Fifth Amendment shields her from producing the corporate documents as the custodian runs headlong into well established authority to the contrary. She acknowledges that the Fifth Amendment does not shield a corporation from producing company documents. "Since the privilege against self-incrimination is a purely personal one, it cannot be utilized by or on behalf of any organization, such as a corporation." *White,* 322 U.S. at 699, 64 S.Ct. 1248; *see also Braswell v. United States,* 487 U.S. 99, 105, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988) ("[T]here is a clear distinction ... between an individual and a corporation, and ... the latter has no right to refuse to submit its books and papers for an examination at the suit of the State.") (quoting *Hale v. Henkel,* 201 U.S. 43, 74, 26 S.Ct. 370, 50 L.Ed. 652 (1906)). At least in this instance, corporations are not people. In order to claim Fifth Amendment immunity, "the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity." *White,* 322 U.S. at 699, 64 S.Ct. 1248. The Supreme Court has drawn a bright line between an individual and a collective entity such as a corporation. *See Braswell,* 487 U.S. at 105, 108 S.Ct. 2284. "A custodian may not resist a subpoena for corporate records on Fifth Amendment grounds." *Id.* at 113, 108 S.Ct. 2284. This is true even if production would incriminate the custodian personally. *Bellis,* 417 U.S. at 88, 94 S.Ct. 2179.

The difference between those cases and this one, says Mary Roe, is that collective entities had multiple employees. In *Bellis,* for example, the subpoenaed law firm had nine employees, including the partner who moved to quash the subpoena. Here, the total number of employees of John Doe, Inc. is one: Mary Roe herself. Citing precedent acknowledging that the act of production itself can be testimonial and incriminating, *see United States v. Doe,* 465 U.S. 605, 613 & n. 11, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) (respecting the district court's finding that "enforcement of the subpoenas would compel [respondent] to admit that the records exist, that they are in his possession, and that they are authentic"), Mary Roe asserts that as the only possible corporate agent, the inference that she is the one acknowledging those documents and their contents is unavoidable. She insists that responding to the subpoena would furnish a critical link in the chain of evidence against her and there is no alternative custodian that can produce the documents while avoiding self-incrimination. She finds some encouragement for her position in a footnote dropped by the Supreme Court in *Braswell v. United States,* suggesting that the collective entity rule may not apply to one-person

shops. *See Braswell*, 487 U.S. at 118 n. 11, 108 S.Ct. 2284.

In *Braswell v. United States*, the Court rejected the petitioner's argument that the collective entity rule did not apply when a corporation is so small that it constitutes nothing more than the individual's *alter ego*. The petitioner formed two corporations and was the sole shareholder of one of them. Although the petitioner's mother and wife served as directors of both corporations, they had no authority over either of them. A federal grand jury served the petitioner with a subpoena, which he moved to quash on the grounds that it violated his Fifth Amendment privilege against self-incrimination. The Court rejected the petitioner's argument that the act of production has independent testimonial significance that would incriminate him personally. The Court reasoned that the custodian held the records not personally, but as an agent of the corporation. Because the custodian held the documents in a representative capacity, "the custodian's act of production is not deemed a personal act, but rather an act of the corporation." 487 U.S. at 110, 108 S.Ct. 2284. It followed, then, that "[a]ny claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege." *Ibid.*

The *Braswell* Court acknowledged some tension between its agency rationale and the personal self-incrimination of the agent. Because the custodian's act of production "is deemed one of the corporation and not the individual," *id.* at 118, 108 S.Ct. 2284, the Court drew a shady line circumscribing the use that the government could make of the custodian's turnover of the corporate records. The Court declared that "in a criminal prosecution against the custodian, the Government may not introduce into evidence before the jury the fact that the subpoena was served upon and the corporation's documents were delivered by one particular individual, the custodian." *Ibid.* But in the next sentence, the Court allowed the act of production to be used as testimonial evidence against the corporation, "establishing that the corporation produced the records subpoenaed," *ibid.*, from which it could be inferred that "the records in question are authentic corporate records, which the corporation possessed, and which it produced in response to the subpoena," *ibid.* The Court then reasoned, "[b]ecause the jury is not told that the defendant produced the records, any nexus between the defendant and the documents results solely from the corporation's act of production and other evidence in the case." *Ibid.* To that last observation, the Court appended the following footnote:

> We leave open the question whether the agency rationale supports compelling a custodian to produce corporate records when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records.

*Id.* at 118 n. 11, 108 S.Ct. 2284. Mary Roe says that she has made that precise showing, the "open question" should be answered in her favor, and therefore she should be able to resist the subpoena.

Although the Supreme Court left this question open, no lower court has recognized an exception that would permit a custodian of a one-person corporation to claim a Fifth Amendment privilege to resist a subpoena for corporate documents. And although the Sixth Circuit has not addressed the issue, there is abundant authority to the contrary. For example, in *Amato v. United States*, 450 F.3d 46, 47 (1st Cir.2006), the First Circuit denied the defendant's motion to quash two ad-

ministrative subpoenas even though the defendant operated as the sole shareholder, director, officer, and employee of the corporation. The defendant, a chiropractor, incorporated his practice as a corporation called Amata P.C. in New York and Mainecures in Maine. *Id.* at 47. Several years later, law enforcement began to investigate the defendant for federal health-care crimes. *Ibid.* As part of the investigation, officers served two administrative subpoenas on the defendant as the records custodian of the corporation. *Id.* at 47–48. The subpoena required the records custodian to appear with the records at the United States Attorney's Office or, alternatively, to deliver the records with certificates of authenticity to the United States Attorney's Office. *Id.* at 48. The defendant, invoking footnote eleven in *Braswell*, argued that the act-of-production doctrine protected him from producing the records. *Ibid.* The First Circuit acknowledged that the case "test[ed] the Fifth Amendment boundaries when the act-of-production doctrine intersects with the collective-entity doctrine." *Id.* at 50. Nevertheless, the court declined to recognize an exception to the collective-entity doctrine even when the custodian of records is the corporation's sole shareholder, director, officer and employee. *Ibid.* (citing *United States v. Lawn Builders of New England, Inc.,* 856 F.2d 388, 394 (1st Cir.1988); *In re Grand Jury Proceedings (The John Doe Company),* 838 F.2d 624, 627 (1st Cir. 1988)).

More recently, the Second Circuit reached the same conclusion in *In re Grand Jury Subpoena Issued June 18, 2009,* 593 F.3d 155 (2d Cir.2010). A grand jury issued a subpoena construed to apply to two corporations in connection with an investigation relating to bank fraud, illegal gambling, and money laundering. *Id.* at 156. The district court held the appel-

lant—the sole shareholder, officer, and employee of the companies—in contempt after he refused to comply with a subpoena on Fifth Amendment grounds. In affirming the district court's contempt order, the Second Circuit cited several policy reasons for holding that a one-person corporation could not resist a subpoena on Fifth Amendment grounds:

> First, it prevents the erosion of the unchallenged rule that the [corporation] itself is not entitled to claim any Fifth Amendment privilege. Second, it recognizes that the decision to incorporate is freely made and generates benefits, such as limited liability, and burdens, such as the need to respond to subpoenas for corporate records. Third, it avoids creating a category of organizations effectively immune from regulation by virtue of being beyond the reach of the Government's subpoena power.

*Id.* at 158–59. (internal quotations omitted). The Second Circuit also questioned the appellant's argument that a jury would inevitably conclude that the appellant himself produced the documents. *Id.* at 159. Although the court concluded that the inference would be strong, a jury might conclude that the government obtained the documents on their own or that the corporation engaged a third party to search its records and make the production on its own behalf. *Ibid.*

Other courts have applied the same rationale when refusing to recognize that a records custodian has a Fifth Amendment privilege to refuse to produce records in response to a subpoena served on a one-person collective entity. In *United States v. Feng Juan Lu,* 248 Fed.Appx. 806 (9th Cir.2007), for example, the Ninth Circuit held that the Fifth Amendment does not extend to a limited liability company with only one-member. The Ninth Circuit emphasized the defendant's intentional deci-

sion to "organize her businesses as LLCs and obtain the benefits of that business structure," which established that the subpoenaed "business documents are not personal to her because she clearly intended the businesses to be separate from her in the event of a lawsuit." *Id.* at 808. *See also United States v. Stone,* 976 F.2d 909, 912 (4th Cir.1992) (appellant made a choice to form a corporation rather than a sole proprietorship; having made that choice, the appellant could not disregard the corporate form, claim Fifth Amendment protection, and shield his business records from protection); *United States v. Maxey & Co., P.C.,* 956 F.Supp. 823, 829 (N.D.Ind. 1997) ("Mr. Maxey made the conscious decision to incorporate his tax preparation business rather than operate it as a sole proprietorship ... [he] is not entitled "to have his cake and eat it too." "); *Expert Janitorial v. Williams,* 3:09–CV–283, 2010 WL 2854295, at *5 (E.D.Tenn. July 19, 2010) (rejecting the defendant's attempt to "hav[e] the best of both business forms;" having made a choice to form a LLC, the defendant cannot disregard the creation of that entity, separate and apart from her personal identity and rights, in order to avoid discovery).

This rationale is persuasive. Mary Roe made a choice to incorporate. She could have chosen to operate her consulting business in another form. Had she established John Doe as a sole proprietorship, she could have claimed Fifth Amendment protection. *See United States v. Doe,* 465 U.S. 605, 617, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). Her choice to incorporate "generate[d] benefits, such as limited liability, and burdens, such as the need to respond to subpoenas for corporate records." *In re Grand Jury Subpoena Issued June 18, 2009,* 593 F.3d at 159. Having made a choice to incorporate, Mary Roe "is not entitled to have [her] cake and eat it too." *Maxey & Co., P.C.,* 956

F.Supp. at 829; *see also Feng Juan Lu,* 248 Fed.Appx. at 808; *Stone,* 976 F.2d at 912 (4th Cir.1992); *Williams,* 2010 WL 2854295, at *5. She may not, in other words, disregard her choice to incorporate, claim Fifth Amendment protection, and shield her business records from production. *See Stone,* 976 F.2d at 912.

Mary Roe asks the Court to consider two alternatives to the subpoena requiring her to produce John Doe's corporate records in her representative capacity as records custodian. She says that the government could try to obtain the documents from other sources to avoid forcing Mary Roe to incriminate herself. But she does not support this argument with legal authority, instead appealing to reasonableness and good faith. Mary Roe also argues that the government could grant her immunity from prosecution. Both arguments are unpersuasive. Mary Roe's first argument fails because, as discussed above, compliance with the subpoena will not violate Mary Roe's Fifth Amendment right against self-incrimination. Therefore, the Court cannot conclude that compliance with the subpoena is "unreasonable or oppressive." *See* Fed.R. Crim.P. 17(c)(2). The Court in *Braswell* rejected Mary Roe's second argument, highlighting the "significant drawback" and "serious consequences" of granting production immunity "if the Government has any thought of prosecuting the custodian." 487 U.S. at 117, 108 S.Ct. 2284.

Mary Roe must comply with the subpoena to produce John Doe's records.

### C.

 The subpoena also includes forms that require additional information from Mary Roe. Presumably, if she responded in person, the grand jury would demand from her testimony along the

same lines. The government seeks information from her that verifies that the documents are authentic; and additional information that would satisfy the business records exception to the hearsay rule. Mary Roe says that compelling her to produce this information would require her to "furnish a link in the chain of evidence" needed to convict her in a way that violates the Fifth Amendment. The government contends that Mary Roe has no legal basis to resist furnishing this information.

■■■■ Authenticating a document and showing that it qualifies for a hearsay exception are not the same. There is a difference. To *authenticate* a document, one merely "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R.Evid. 901(a); *United States v. Crosgrove,* 637 F.3d 646, 658 (6th Cir.2011). To *qualify* a document as satisfying the hearsay exception for business records, one must show that the records were kept in the ordinary course of business, it was the regular practice of the business to keep the records, and the documents were created by a person with knowledge of the events recorded therein or from information transmitted by such an individual. Fed.R.Evid. 803(6); *United States v. Humphrey,* 279 F.3d 372, 378 (6th Cir. 2002) (citing *United States v. Laster,* 258 F.3d 525, 529 (6th Cir.2001)).

The authentication question was settled by the Supreme Court in *Curcio v. United States,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957). In that case, the Court held that the secretary of a union local could refuse to answer questions about the location of subpoenaed union records, which the secretary did not possess. But the privilege did not apply to questions about the authenticity of documents in his possession. The Court reasoned:

The custodian's act of producing books or records in response to a subpoena duces tecum is itself a representation that the documents produced are those demanded by the subpoena. Requiring the custodian to identify or authenticate the documents for admission in evidence merely makes explicit what is implicit in the production itself. The custodian is subjected to little, if any, further danger of incrimination.

354 U.S. at 125, 77 S.Ct. 1145.

Because the act of producing documents is deemed tantamount to authenticating them, the cases that withhold the Fifth Amendment privilege from agents of one-person collective entities also apply to the authentication question. *See, e.g., Amato,* 450 F.3d at 52–53 ("One of those [corporate] responsibilities is to produce and authenticate records of the corporation when they are subpoenaed by a grand jury." (quoting *In re Grand Jury Proceedings (The John Doe Co., Inc.),* 838 F.2d 624, 627 (1st Cir.1988))).

The government argues that the qualification question is settled as well by Sixth Circuit precedent, citing *In re Custodian of Records of Variety Distrib., Inc.,* 927 F.2d 244 (6th Cir.1991). That case arose in a slightly different setting. The records custodians were subpoenaed to produce and authenticate documents concerning the distribution of an allegedly obscene film. They also were ordered to give testimony at the obscenity trial that would qualify the documents as business records. One of the witnesses produced documents but refused to answer the qualification questions and was held in contempt. In affirming the contempt findings, the court of appeals did not discuss the distinction between authentication and qualification; instead it confounded the two concepts and determined that *Curcio* was controlling. 927 F.2d at 248–49 (stating that

"[t]he testimony demanded of the custodian in such cases is 'auxiliary' to the act of producing unprivileged corporate records and is different from the type of explicitly incriminating oral testimony sought from petitioner Curcio that went beyond his representative duty as records custodian to produce, identify, and authenticate records subject to a subpoena"). Indeed, the court did not even mention qualification, and treated the testimony directed to the business records exception as "authentication." *Id.* at 251 (observing that "authentication merely makes explicit what is implicit in the act of production and the custodian is subjected to little, if any, further danger of incrimination" (quotation marks and citation omitted)). However, the court cited *Braswell's* footnote eleven, and stated that the witness must give the demanded testimony because he did "not allege that he is the sole employee and officer of Western Visuals, Inc." *Id.* at 251–52.

Several courts have criticized the Sixth Circuit's reasoning. In *In re Grand Jury Proceedings,* the court noted that the word "authenticate" has been used with imprecision resulting in the unwarranted expansion of *Curcio's* and *Braswell's* limitation of the Fifth Amendment privilege. 473 F.Supp.2d 201, 209–10 (D.Mass.2007). In that case, the court held that although the corporate custodian was required to produce and authenticate the subpoenaed documents, he was not required to give testimony qualifying them under Rule 803(6). The court found that the Sixth Circuit's opinion was based on the incorrect premise that testimony sufficient to qualify documents as business records was the same as testimony sufficient to authenticate the documents, and "indeed goes further than any other court appears to have gone." *Id.* at 209 (quoting *In re Grand Jury Empaneled on April 6, 1993,* 869 F.Supp. 298, 303–04 (D.N.J.1994)). Additionally,

the court disagreed that Rule 803(6) testimony, unlike authentication testimony, is implicit in the act of producing a document.

> A witness who produces a document and testifies that the document is responsive to the subpoena has implicitly indicated that the document is genuine; it is but a tiny step from there to authentication testimony, which essentially consists of testimony to the same effect. However, to qualify a document as a business record under Rule 803(6), at a minimum there must be testimony concerning the regular record-creation and record-maintaining practices of the corporation at the relevant time. That testimony may or may not be routine, depending on the facts and circumstances, but it is never implicit in the act of producing records.

*Id.* at 210. The court therefore concluded that testimony sufficient to qualify documents as business records under Rule 803(6) cannot be compelled from a corporate records' custodian who asserts a Fifth Amendment privilege. *Ibid.*

Other courts have reached the same conclusion. In *In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.,* a district court denied the government's motion to compel a company's records custodian to qualify responsive documents as business records under Rule 803(6). 706 F.Supp.2d 11, 23 (D.D.C. 2009). The grand jury had issued four subpoenas for the production of documents. *Id.* at 13. Attached to the subpoenas were custodian of records forms that required the company to authenticate the documents under Rule 803(6). *Ibid.* The company provided documents responsive to two of the subpoenas, but did not complete the requested custodian of records forms. *Ibid.* The court found that completing the forms was not auxiliary to the

act of production and may create further danger of incrimination. *Id.* at 15.

Although the Supreme Court has held that a custodian may be compelled to authenticate documents, qualifying documents under Rule 803(6) entails more than just authentication. Authentication is merely a condition precedent for admissibility, whereas qualifying a document as a business record establishes both admissibility as well as authenticity. [The custodian], if called on solely to authenticate the documents, would only be required to state that the documents that have been produced are those responsive to the subpoena. This testimony, by itself, would merely make explicit what was implicit in the production of the documents and as such it is auxiliary to the act of production. Requiring [the custodian] to qualify the documents as business records would involve far more, and likely poses a danger of self-incrimination. If compelled, [the custodian] would have to testify about Company X's business practices, that the records were made at or near the time of the events they record, and by or from a person with knowledge of the events recorded therein. None of that testimony is implicit in the act of production, nor is it clear that it would not be incriminatory.

*Ibid.* (internal citations omitted).

In *In re Grand Jury Empaneled on April 6, 1993,* the district court held that requiring the custodian of records to qualify records under the business records exception violated the Fifth Amendment. 869 F.Supp. 298, 303–308 (D.N.J.1994). The court "emphatically disagree[d]" with the government's position that such testimony was implicit in the act of production, which relied on the Sixth Circuit's opinion in *Variety Distributing. Id.* at 304. The court believed that the Sixth Circuit failed to appreciate the difference between authentication under Federal Rule of Evidence 901 and admissibility of hearsay under the exceptions to the hearsay rule, *ibid.,* and held that "[c]ompelling respondent to provide oral testimony about how the documents were created, maintained, and circulated by officers and employees is different in kind, and potentially independently incriminating, from producing the documents and testifying that they are those records called for by the subpoena." *Id.* at 306.

Although the soundness of *Variety Distributing's* reasoning is dubious, and its value as precedent questionable (no case has cited it favorably for the proposition advanced by the government), it still remains the law of this circuit. But it does not control here for two reasons. *First,* the case arose from a trial setting, not a grand jury subpoena. There is no need for the government to establish a hearsay exception before the grand jury can consider the contents of corporate documents. The hearsay rules do not apply to grand jury proceedings. Fed.R.Evid. 1101(d)(2) ("These rules—except for those on privilege—do not apply to ... grand jury proceedings."); *see also In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.,* 706 F.Supp.2d at 16 (observing that "it is not clear what purpose (at least at this stage) would be served by compelling Mr. X to qualify responsive documents as business records. There is no prohibition against presenting hearsay to the grand jury").

*Second,* as the *Variety Distributing* court implicitly recognized, the fact that qualification testimony will come from the sole representative of a one-person corporation is significant to the question of self-incrimination. As noted above, to qualify the documents as a business record under Rule 803(6), Mary Roe must testify that the writing was made by a person with

knowledge of the recorded event or who received the information from a person with such knowledge. Because in a one-person business those are one and the same, furnishing such testimony amounts to an admission of knowledge of the business's activities.

The "touchstone for evaluating the appropriateness of the [Fifth Amendment] privilege [is] the 'incriminating tendency of the disclosure.'" *Haner v. United States,* 440 U.S. 1308, 1309, 99 S.Ct. 1485, 59 L.Ed.2d 762 (1979) (quoting *Wilson v. United States,* 221 U.S. 361, 379, 31 S.Ct. 538, 55 L.Ed. 771 (1911)). "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

■ Here, Mary Roe is being investigated for possibly engaging in conduct to defraud XYZ Company. Although the government does not specify the statute that may have been violated, it is likely that the government will need to establish the elements of intent or knowledge to prosecute her for fraud. *See, e.g., United States v. Prince,* 214 F.3d 740, 747–48 (6th Cir.2000) ("The elements of wire fraud, as prescribed under 18 U.S.C. section 1343 are as follows: (1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property."); *United States v. Merklinger,* 16 F.3d 670, 678 (6th Cir.1994) ("To support a conviction for mail fraud, 18 U.S.C. § 1341 the government must prove: (1) the existence of a scheme to defraud, (2) which involves the use of the mail, or of wire transmissions, (3) for the purpose of

executing the scheme."). The government may establish the elements of fraud by circumstantial evidence. *See United States v. Griffith,* 17 F.3d 865, 872 (6th Cir.1994). The qualification certificate would aid the government in its efforts to establish the requisite *mens rea* to convict Mary Roe of fraud because it requires her to reveal that she is familiar with the possibly fraudulent records, had personal knowledge about the contents of those records, and kept them in the course of regularly conducted business activity, and it was the practice of John Doe to create those records.

The Court concludes that Mary Roe may refuse to furnish testimony and written confirmation required to qualify the subpoenaed corporate documents as business records on the basis of her Fifth Amendment privilege against self-incrimination.

## III.

Based on the government's concession, Mary Roe need not produce any documents that were created before the formation of John Doe, Inc. on March 28, 2001, because such documents would not be responsive to the subpoena. Documents that were created after that date, but are Mary Roe's personal papers, need not be produced. If there is any doubt whether a document can be characterized as a corporate document, Mary Roe may submit it to the Court *in camera* and request a ruling by filing an appropriate motion. However, she must produce corporate documents responsive to the subpoena and authenticate them by certifying or testifying that the documents are corporate papers of John Doe, Inc., they are responsive to the subpoena, and they are within the possession, custody, or control of the corporation. She may assert her Fifth Amendment privilege to refuse to answer any other questions about the documents.

Accordingly, it is **ORDERED** that the motion to quash the grand jury subpoena [dkt. # 1] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that Mary Roe, as custodian of the records of John Doe, Inc., must produce documents responsive to the grand jury subpoena issued on April 30, 2013, and certify under oath in writing or by testimony that the documents are corporate papers of John Doe, Inc., they are responsive to the subpoena, and they are within the possession, custody, or control of the corporation.

It is further **ORDERED** that Mary Roe may assert her Fifth Amendment privilege to refuse to answer any other questions about the documents.